IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DEXTER WALTER CAPERS, pro se, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DURHAM COUNTY SHERIFF ) <br> DEPARTMENT, SHERIFF WORTH HILL, ) <br> N.P. HOLIDAY, PERCY ELLIOTT, ) <br> JOSEPH STEPHENSON, OFFICER FEIK, ) <br> COUNTY OF DURHAM, ) <br> ) <br> Defendants. ) | **MEMORANDUM OPINION**, **ORDER, AND RECOMMENDATION** <br><br> 1:07CV825 |

This matter is before the court on a motion for summary judgment by Defendants Worth Hill, N.R. Perkins (referred to in the Complaint as N.P. Holiday), Perry Elliott (referred to in the Complaint as Percy Elliott), and Joseph Stephenson (docket no. 40). Also before the court is a motion to dismiss by Defendant Durham County Sheriff Department (docket no. 20) and a motion to dismiss by Defendant Durham County (docket no. 55). Furthermore, Plaintiff has filed a motion to produce discovery (docket no. 53), requesting the court to order Defendants to produce "verified statements" regarding video cameras used in the Durham County jail. The parties have responded in opposition to the respective motions or the time to do so has passed. In this posture, the matter is ripe for disposition. Because the parties have not consented to the jurisdiction of a magistrate judge, I must deal with all dispositive motions by way of a recommended ruling. For the reasons that follow,

it will be recommended that Defendants' motion for summary judgment be granted, that Defendant Durham County's motion to dismiss be granted, and that Durham County Sheriff Department's motion to dismiss be granted. Furthermore, Plaintiff's motion to produce discovery will be denied.

**BACKGROUND**

This is an action brought by a former pretrial detainee pursuant to 42 U.S.C. § 1983. Plaintiff alleges a claim for damages arising from the use of excessive force while he was in the Durham County jail. Plaintiff also purports to allege a claim for false imprisonment based on the fact that Durham County jail officials held him in jail for two days after he was allegedly ordered to be released. Plaintiff has named as Defendants various officials at the Durham County jail, Durham County Sheriff Worth Hill, Durham County, and the "Durham County Sheriff Department." Plaintiff alleges that Defendants Elliott and Stephenson, both detention officers at the jail, used excessive force against him. Plaintiff seeks to impose supervisor liability as to Defendants Sheriff Worth Hill and Lt. Col. N.R. Perkins (referred to in the Complaint as N.P. Holiday), based on their alleged failure to train and supervise.

At all relevant times, Plaintiff was a pretrial detainee in the custody of the Durham County jail. Plaintiff was held in the jail between August 1, 2006, and August 3, 2006, on a charge of Possession of Drug Paraphernalia. Other charges were plea bargained on August 1, 2006. The court failed to dismiss the drug possession charge on August 1, 2006, even though it should have been dismissed

on that date as part of Plaintiff's plea arrangement. Assistant District Attorney Ashley E. Cannon dismissed the drug possession charge on August 3, 2006, and Plaintiff was released from custody on that date.

Plaintiff believed he was to be released on August 1, 2006, so when he still had not been released by August 2 he became very frustrated. On August 2, 2006, Plaintiff gave a note to his mental health provider, Kelli Wenzel, in which he stated "that if I am not released today . . . I am going to make work for everybody 24/7 untill [sic] I am released. So get that restraint chair ready again, and about 20 officers to put me in it." (Wenzel Aff. ¶ 3 & Ex. A, attached as Ex. 2 to Defs.' Mot. Summ. J.) The next day, August 3, Plaintiff refused to take his medication and gave another note to Officer Paressa Clement. This note stated: "Please don't make me have to 'Act' like a ("fool") up in here! Which you know I am capable of doing!!" (Clement Aff. ¶ 3 & Ex. A, attached as Ex. 1 to Defs.' Mot. Summ. J.) Plaintiff does not deny writing the notes, but adamantly denies that he refused to take his medication.

Defendants contend that on August 3, 2006, Officer Elliott went to the jail pod where Plaintiff was being held to talk to Plaintiff about when Plaintiff was going to be released from the jail. (*See* Elliott Aff. ¶ 4, attached as Ex. 4 to Defs.' Mot. Summ. J.) According to Defendants, Officer Elliott told Plaintiff that he would be released when it was time. (*Id.*) Plaintiff stated to Officer Elliott, "Fuck that I am finished with Durham County," and then left his cell to go take a shower. (*Id.*) When Plaintiff got out of the shower, he pushed Officer Elliott in the chest, and then swung at him with

his fist. (*Id.*) Officer Elliott defended himself and attempted to restrain Plaintiff. (*Id.*) Officer Clement called for help, and Officers Feik and Surles responded. (*See* Clement Aff. ¶ 5, attached as Ex. 1 to Defs.' Mot. Summ. J.) When Officer Surles arrived, Officers Elliott and Feik were restraining Plaintiff, but he continued to fight with them. (*See* Ex. B to Clement Aff.) Officer Surles then handcuffed Plaintiff. (*Id.*)

Officer Stephenson and other officers then escorted Plaintiff to the medical unit for treatment of minor wounds. (Stephenson Aff. ¶ 3, attached as Ex. 3 to Defs.' Mot. Summ. J.) Once in medical, Plaintiff refused to be examined and began arguing with the medical staff. (*Id.*) Kelli Wenzel attempted without success to calm Plaintiff down and have him allow the medical staff to examine him. (Perkins Aff., Exs. G & H, Wenzel Aff. ¶ 3.) Plaintiff then refused to leave the medical unit, grabbed a desk, and began hitting his head against the wall. (Stephenson Aff. ¶ 3.) Plaintiff was then placed on suicide watch, placed in a suicide smock, and placed in a restraint chair to prevent him from further injuring himself. (*Id.* ¶ 4, *see also* Perkins Aff., Ex. F.) Defendants contend that the medical reports and various affidavits show that Plaintiff suffered only minor injuries.

Plaintiff offers a different version of events in support of his excessive force claim, and he has offered his own affidavit in response to the summary judgment motion. In his affidavit, Plaintiff alleges that on the morning of August 3, 2006, as he was exiting his cell to get in the shower, Officer Elliott entered the pod and started yelling at Plaintiff, saying, "Don't make me have to whip your ass!" (Capers

Aff. ¶¶ 6, 7.) According to Plaintiff, he showed Officer Elliott his paperwork indicating that he should already have been released, but Officer Elliott told Plaintiff that he had to wait to be released and that if Plaintiff continued to complain, he wouldn't have "to worry about getting released [because] they would be shipping my body home in a box." (*See id.* ¶¶ 8, 9.) Plaintiff contends that Officer Elliott told him, among other things, that he didn't "want no problem out my crazy ass," that Plaintiff "will feel the pain" if he caused problems, and that Officer Elliott didn't care if Plaintiff killed himself by banging his head on the wall. (*Id.*)

Plaintiff contends that he went on to take his shower. (*Id.* ¶ 10.) While Plaintiff was showering, Officer Elliott continued to make derogatory, belittling, and threatening statements to Plaintiff, ordering Plaintiff to "Get your black fucking ass out that shower, you bitch ass nigger." (*Id.*) Plaintiff alleges that he complied with Officer Elliott's order, but that Elliott then confronted him "verbally and physically." (*Id.*) Officer Elliott struck Plaintiff in his face repeatedly with Elliott's hand. (*Id.*) Plaintiff raised his hands in defense to ward off further assault. (*Id.*) Plaintiff contends that Officer Feik, who was present the entire time, did nothing until Plaintiff pushed Officer Elliott away from him in self-defense, at which time Officer Feik grabbed Plaintiff in a choke hold from behind. (*Id.*)

Plaintiff alleges that about 15 other officers arrived in the pod, jumped on Plaintiff, and threw him to the floor, causing him to strike his head, and then handcuffed his arms behind his back. Plaintiff alleges that during this time

Defendant Officer Elliott was yelling for the other officers to "Hold him Down!" (*Id.*) Plaintiff alleges that Officer Elliott then choked Plaintiff, causing him to temporarily lose consciousness. (*Id.*) Plaintiff alleges that when he regained consciousness, Officer Elliott was beating him in the face and head with a portable radio. Plaintiff alleges that the beating caused permanent scars and serious injuries requiring medical treatment. Plaintiff contends that he never attacked or hit Officer Elliott or any of the other officers, except to push Defendant Officer Elliott away in an act of self-defense. (*Id.* ¶¶ 8, 10.)

Plaintiff alleges that while Officer Elliott was beating him, the other officers were telling Officer Elliott to stop beating Plaintiff before he killed him. (*Id.* ¶ 10.) Plaintiff alleges that several officers, including Sergeant Joseph Stephenson, then handcuffed Plaintiff, forcibly removed him from the pod, and took him to the medical unit for treatment. (*Id.* ¶¶ 10, 11.) Plaintiff alleges that he was bleeding from his mouth and had cuts to his face, which has left "permanent scarring [from] being struck repeatedly . . . causing swelling to my forehead, face, and has left me with irreparable dental damage," with the need for a root canal and caps on numerous front teeth. (*Id.* ¶ 11.) Plaintiff contends that none of these wounds were self-inflicted. (*Id.*)

Plaintiff further contends that while in the medical unit Sergeant Stephenson threw Plaintiff against a medical counter and then struck Plaintiff in the face and head with a closed fist. (*Id.* ¶ 12.) Plaintiff contends that he then "snapped[,] crying

-6-

and tried to hurt myself." (*Id.*) Plaintiff contends that after being beaten for several minutes, he was placed in a restraint chair and taken to a protective custody area. (*Id.* ¶ 13.)

Plaintiff also offers an affidavit of Dwight Hughes in response to the summary judgment motion. (*See* Hughes Aff., attached to Pl.'s Response Br.) Hughes was at all relevant times an inmate at the Durham County jail when excessive force was allegedly used against Plaintiff. Hughes states in his affidavit that he was housed in the same pod as Plaintiff and that he witnessed the altercation between Officer Elliott and Plaintiff on the morning of August 3, 2006. (Hughes Aff., pp. 2-6.) Hughes repeats much of Plaintiff's allegations regarding things that Officer Elliott said to Plaintiff, such as telling Plaintiff "to get his black mother f_ _ k _ _ _ ass out of the shower." (*Id.*, p. 4.) Hughes states that when Plaintiff stepped out of the shower Officer Elliott

> approached [Plaintiff] yelling at him, and struck him in his face with his hand several times. I witness[ed] [Plaintiff] tell [Elliott] and heard him ask the officer to stop hitting him in his face. [Elliott] continued, where [Plaintiff] push[ed] [Elliott] away from him with a push to his chest. [Elliott] started to throw punches [Plaintiff's] way. It appeared to me that [Plaintiff] tried to grab [Elliott's] swinging arms to ward off further blows . . . .

(*Id.*) Hughes states that Officer Feik then came over and put Plaintiff in a choke hold, bringing Plaintiff to the ground. (*Id.*) Hughes states that Plaintiff was then handcuffed, while Officer Elliott yelled for the officers to "hold him down," while Elliott "continued to kick, beat, [and] punch [Plaintiff] about his face with his fist drawing

-7-

blood from [Plaintiff's] face." (*Id.*)  Hughes states that Officer Elliott then started to choke Plaintiff, and he then began hitting Plaintiff in the face and head with a walkie-talkie.  (*Id.*)  Other officers told Officer Elliott to stop hitting Plaintiff before he "kill[ed] him."  (*Id.*)  Hughes states that Plaintiff then "started banging his own head against [the] ground, while he was being assaulted by [Elliott]."  (*Id.*)  Hughes states that the other officers then dragged Plaintiff out of the pod.

Plaintiff's Motion for Discovery

I first note that in a motion to produce discovery, Plaintiff requests that "verified statements" be provided to him regarding the video cameras in the Durham County Jail.[1]  The court has already entered a protective order in the case that prohibits Plaintiff from obtaining this discovery.  (*See* docket no. 69.)  In any event, I agree with Defendants that Plaintiff's request exceeds the scope of Rule 34, which allows a party to request documents in the possession of another party.  *See* FED. R. CIV. P. 34.  As Defendants note, the rule does not give a plaintiff the right to require a defendant to create documents for the plaintiff's use during litigation.  Therefore, the motion for discovery is denied.

---

[1] Plaintiff contends that video cameras in the jail captured the alleged beatings by both Officers Elliott and Stephenson and that he should be allowed to obtain discovery of the video cameras.  Defendants counter that none of the video cameras in the jail would have captured the alleged beatings, which Defendants deny occurred.  As noted, this dispute between the parties has already been addressed, as the court has entered a protective order staying discovery.

**ANALYSIS**

I. Motions to Dismiss by Defendant Durham County Sheriff Department and Durham County

Defendants Durham County Sheriff Department and Durham County have both filed separate motions to dismiss. Durham County Sheriff Department seeks dismissal based on lack of personal jurisdiction, and Durham County seeks dismissal based on failure to state a claim.

First, Defendant Durham County Sheriff Department seeks dismissal for lack of personal jurisdiction on the basis that it is not a legal entity capable of being sued. I agree. Pursuant to Rule 17(b) of the Federal Rules of Civil Procedure, the capacity of governmental entities to sue or be sued is determined by the law of the state where district court is held. *Wright v. Durham County Jail & Staff*, No. 1:00CV922, 2002 WL 737730 (M.D.N.C. Mar. 4, 2002). In North Carolina, "[t]he defendant in a civil action must be an existing legal entity, either natural or artificial." *Rollins v. Junior Miller Roofing Co.*, 55 N.C. App. 158, 163, 284 S.E.2d 697, 701 (1981). I agree that Defendant Durham County Sheriff Department is not a legal entity capable of being sued. Furthermore, Plaintiff has already named the proper party–Worth Hill, the Sheriff of Durham County–as a Defendant in this case. Therefore, Defendant Durham County Sheriff Department should be dismissed as a named Defendant in this case.

Next, Defendant Durham County seeks dismissal on the basis that Plaintiff has failed to state a claim against Durham County because the Sheriff of Durham County, not Durham County, is responsible for policies at the Durham County jail. For the following reasons, I agree.

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

Generally, the court looks only to the complaint itself to ascertain the propriety of a motion to dismiss. *See George v. Kay*, 632 F.2d 1103, 1106 (4th Cir. 1980). A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir. 1978). This duty of fair notice under Rule 8(a) requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). As the Supreme Court has recently instructed, although detailed facts are not required, "a plaintiff's obligation to provide

the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted).

Here, Plaintiff is alleging a claim against the County based on the alleged conduct of various detention officers in the jail and the manner in which the jail is run–specifically, the length of time it takes to process judicial orders of release. In *Knight v. Vernon*, 214 F.3d 544, 552 (4th Cir. 2000), the Fourth Circuit stated that in determining whether the county is liable for the sheriff's action, the court reviews "how state law allocates power and responsibility." *See also State ex rel. Wellington v. Antonelli*, No. 1:01cv01088, 2002 WL 31875504, at *3 (M.D.N.C. Dec. 20, 2002) (holding that where a local government does not have final authority over a particular policy carried out by the sheriff, it cannot be held liable under Section 1983 for alleged constitutional violations committed by the sheriff or his deputies). In North Carolina, Sheriffs make the policies regarding county jails. Section 162-22 of the North Carolina General Statutes provides: "The sheriff shall have the care and custody of the jail in his county; and shall be, or appoint, the keeper thereof." N.C. GEN. STAT. § 162-22 (1983). Furthermore, the Sheriff may not delegate the duties to the county. Section 162-24 provides: "The sheriff may not delegate to another person the final responsibility for discharging his official duties, but he may appoint a deputy or employ others to assist him in performing his official duties." N.C. GEN. STAT. § 162-24 (1983). Moreover, under North Carolina law the Sheriff and his

deputies are not employees or agents of the County. *Clark v. Burke County*, 117 N.C. App. 85, 89, 450 S.E.2d 747, 749 (1994) (stating that a deputy was an employee of the Sheriff, not an employee of the County). Rather, the Sheriff is a state official. *Buchanan v. Hight*, 133 N.C. App. 299, 304-05, 515 S.E.2d 225, 229 (1999).

As Defendant notes, Durham County has no authority or responsibility in establishing procedures or policies for the jail or in the administration of the jail. Because Durham County has no control over the policies of the jail, Plaintiff fails to state a claim against Durham County, and the county should therefore be dismissed as a Defendant.

II. Plaintiff's Claims against the Remaining Defendants

A. Plaintiff's Claim for "False Imprisonment" Based on Being Held for Two Days in the Durham County Jail

The remaining Defendants–with the exception of Officer Feik, who has not been served–have moved for summary judgment as to all of Plaintiff's claims. Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the

-12-

non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

Defendants first contend that, as to Plaintiff's wrongful imprisonment claim for being detained in jail after August 1, 2006, Plaintiff's incarceration was pursuant to a court order to hold him on a drug possession charge; therefore, they are immune from liability for actions taken consistent with that order. *See Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 337 (4th Cir. 2001) (en banc). Defendants contend that it does not matter whether Plaintiff entered into a plea arrangement with the District Attorney's office on August 1 as to other charges because until the court entered another order releasing Plaintiff, or until the District Attorney's Office actually dismissed the drug possession charge, the Sheriff and his officers could not release

-13-

Plaintiff. I agree and find that Defendants are entitled to immunity as to Plaintiff's wrongful imprisonment claim based on the jail's failure to release Plaintiff on August 1, 2006.

B.  Plaintiff's Excessive Force Claim

As noted, in this Section 1983 action, Plaintiff brings a claim for excessive force. Defendants contend that there are no genuine issues of fact as to whether the accused Defendant detention officers used excessive force against Plaintiff. According to Defendants, they used the amount of force necessary to protect themselves and to keep Plaintiff from harming himself. Defendants also claim that, in any event, Plaintiff's injuries are *de minimis* and thus do not meet the threshold requirements for an excessive force claim. As such, Defendants contend that they should prevail on summary judgment as a matter of law. For the following reasons, I agree that Defendants are entitled to summary judgment on Plaintiff's excessive force claim.

Because Plaintiff was a pretrial detainee when the alleged excessive force was used, the Due Process Clause in the Fourteenth Amendment, as opposed to the Cruel and Unusual Punishment Clause in the Eighth Amendment, applies to Plaintiffs' claim of excessive force. *See Riley v. Dorton*, 115 F.3d 1159, 1166-67 (4th Cir. 1997). In any event, the Due Process Clause invokes the same standard as the Eighth Amendment with regard to excessive force claims. *Id.* The Supreme Court has determined that the use of excessive physical force "may constitute cruel and

unusual punishment [under the Eighth Amendment even] when the inmate does not suffer serious injury." *Hudson v. McMillian*, 503 U.S. 1, 4 (1992). In order to determine whether a prison official has used "excessive physical force . . . , the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6–7. Furthermore "*de minimis* uses of physical force" are necessarily excluded from the Eighth Amendment's prohibition of cruel and unusual punishment, unless the use of force is "of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

The Supreme Court did not condition cruel and unusual punishment solely on the extent of the injury. In *Hudson*, the plaintiff did not suffer injuries that required medical attention and still the Supreme Court found that the injuries were not *de minimis* for Eighth Amendment purposes. *Id.* at 5, 10. Under *Hudson*, to "prove a claim that prison officials violated [a prisoner's] constitutional rights through the excessive use of force, an inmate must satisfy two requirement[s:]" a subjective one and an objective one. *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998). For a prisoner to satisfy the subjective requirement, he must first show that "the force used by the corrections officers 'inflicted unnecessary and wanton pain and suffering.'" *Id.* (quoting *Hudson*, 503 U.S. at 6).

> [T]his question ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. When evaluating

-15-

evidence to determine whether it is legally sufficient to satisfy the subjective component, a court may allow an inmate's claim to go to the jury only if it concludes that the evidence, viewed in a light most favorable to the claimant, will support a reliable inference of wantonness in the infliction of pain.

*Stanley*, 134 F.3d at 634 (internal citations and quotations omitted).

To satisfy the objective requirement, a prisoner must show "that correctional officers' actions, taken contextually, were 'objectively harmful enough' to offend 'contemporary standards of decency.'" *Id.* (quoting *Hudson*, 503 U.S. at 8). This requires balancing "the force applied and the seriousness of the resulting injury against the need for the use of force and the context in which that need arose." *Id.*

In light of *Hudson*, this circuit stated in *Norman v. Taylor* that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." 25 F.3d 1259, 1263 (4th Cir. 1994). Although the *Norman* Court recognized that *Hudson* "categorically rejected an injury threshold," *id.* at 1263 n.3, the Fourth Circuit in *Norman* also observed that "*Hudson* does not suggest . . . that the extent of injury is irrelevant to whether excessive force has been employed and therefore that an excessive force claim cannot be defeated by evidence that the plaintiff's injury was *de minimis*." *Id.* at 1262-63. After *Norman*, this circuit emphasized in *Carr v. Deeds* that a plaintiff in an excessive force case has the burden of showing that

> [e]ven if there is a genuine issue of material fact as to whether Defendants behaved maliciously or sadistically after the need for force has subsided, plaintiff must also demonstrate that the injuries were

-16-

more than *de minimis* or that the force used [is] of a sort repugnant to the conscience of mankind . . . or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury.

453 F.3d 593, 605-06 (4th Cir. 2006) (internal quotation marks and citations omitted).

Here, this case lacks the "extraordinary circumstances" required under *Norman* to establish an excessive force claim. That is, the force allegedly used was not so excessive as to be repugnant to the conscience of mankind, nor has Plaintiff shown that his injuries were more than *de minimis*, or that the pain itself constituted more than *de minimis* injury. The force used was for the purpose of restraining Plaintiff and preventing an attack on jail personnel, and to protect Plaintiff from injuring himself when he became destructive in the pod and then in the medical unit. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (holding that prison officials may use appropriate force to quell prison disturbances, and an inmate must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm). Even Plaintiff's own affidavit witness Hughes states that he saw Plaintiff banging his own head against the floor while Officer Elliott was trying to restrain him.[2] Plaintiff does not deny that he tried to harm himself by banging his head against the floor and the wall when Defendants Elliott, and then Stephenson,

---

[2] Defendant dismisses Hughes' affidavit outright by asserting that, given Hughes' location in his own cell, he could not have witnessed the altercation between Elliott and Plaintiff. This dispute goes to Hughes' credibility and is an issue for the fact finder. Nevertheless, even taking Hughes' statements as true, Plaintiff suffered no more than *de minimis* injuries, and this case does not rise to the level of "extraordinary circumstances" required under *Norman*.

-17-

were both attempting to restrain him. Furthermore, although Plaintiff contends that he had to be "forcibly removed" from the pod and taken to the medical unit while bleeding from his wounds, the video from the jail cameras shows that Plaintiff walked to the medical unit on his own accord. (*See* Video CD, Ex. I, attached to Perkins Aff.) Once in medical, Plaintiff claims that he was again assaulted by staff, but the staff affidavits and internal investigation of Lt. Ronald Johnson show that it was Plaintiff who grabbed the counter and banged his head against the wall, and even Plaintiff admits that he did this. Even after this, Plaintiff suffered only minor cuts, as shown by the investigative report by Lt. Johnson, and the medical report. (*See* Ex. G., Perkins Aff.) The medical report form indicates "bleeding in mouth and from face. Swelling noted to forehead. [Inmate] refused to have medical assess his wounds." (*Id.*) The form states that when Plaintiff was later brought back to medical and agreed to be seen there were "no life threatening injuries reported." (*Id.*) As to the extent of his injuries, although Plaintiff contends that he suffered "permanent scarring [from] being struck repeatedly . . . causing swelling to my forehead, face, and has left me with irreparable dental damage," with the need for a root canal and caps on numerous front teeth, he offers no medical evidence to support his claim of these injuries.

For all these reasons, Plaintiff has failed to establish a claim for excessive force against Officers Elliott and Stephenson. Furthermore, since Plaintiff has not shown an underlying constitutional violation against the officers who allegedly

-18-

attacked him, there can be no claims against Defendants Hill or Perkins based on supervisor liability. For all of these reasons, Defendants should be granted summary judgment as to Plaintiff's excessive force claim.

**CONCLUSION**

For the reasons stated herein, **IT IS RECOMMENDED** that the motion for summary judgment by Defendants (docket no. 40) be **GRANTED,** and that the motions to dismiss by Defendants Durham County and Durham County Sheriff Department (docket nos. 55 and 20) be **GRANTED**. Furthermore, Plaintiff's motion to produce discovery (docket no. 53) is **DENIED**.

_____
WALLACE W. DIXON
United States Magistrate Judge

March 23, 2009